UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

Eastern District of Kentucky
**FILED**

DEC 0 7 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

NEOGEN CORPORATION,
a Michigan corporation,

        Plaintiff,

v

UNITED STATES DEPARTMENT OF
JUSTICE, UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION, and
S. SCOTT COLLIER, ROBERT A. OTERO,
PAUL SETTLE, and PATRICK SOWER,
in their official and individual capacities,

        Defendants.

Case No. *05-504-JBC*

HON. _____

_____

**COMPLAINT FOR DAMAGES,
INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Neogen Corporation ("Neogen"), a Michigan Corporation, by

and through its attorneys, and, for its Complaint for Damages, Injunctive Relief, and Declaratory

Judgment against Defendants, the United States Department of Justice ("DOJ"), an executive

department of the government of the United States, the United States Drug Enforcement

Administration "DEA"), an agency of the government of the United States of America, and Paul

Settle ("Settle"), Patrick Sower ("Sower"), Robert A. Otero ("Otero"), and S. Scott Collier

("Collier"), filed, *inter alia,* pursuant to 28 U.S.C. § 2201 and F. R. Civ. P. 57, states unto this

Honorable Court as follows:

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Neogen is a Michigan corporation with its principal place of business located in the City of Lansing, Ingham County, Michigan, with facilities and employees located in the City of Lexington, County of Fayette, Commonwealth of Kentucky, within this judicial district and Lexington jury division.

2.      Defendant DOJ is an executive department of the government of the United States of America with its principle place of business located in the District of Columbia.

3.      Defendant DEA, is an agency of the government of the United States of America which is housed within the Defendant DOJ, and has offices and employees throughout the country, including in the City of Louisville, County of Jefferson, Commonwealth of Kentucky.

4.      Defendant DEA carries on a continuous and systematic part of its operations and activities in the City of Lexington, County of Fayette, Commonwealth of Kentucky, within this judicial district and Lexington jury division.

5.      Defendant Settle is, and at all times relevant hereto has been, an employee of DEA and his principle place of business is in the City of Louisville, County of Jefferson, Commonwealth of Kentucky.

6.      The effects of Defendants Settle's actions alleged herein were directed at and felt by Plaintiff Neogen in the City of Lexington, County of Fayette, Commonwealth of Kentucky, within this judicial district and Lexington jury division.

7.      Defendant Sower is, and at all times relevant hereto has been, an employee of DEA and his principle place of business is in the City of Louisville, County of Jefferson, Commonwealth of Kentucky.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

2

8.     The effects of Defendant Sower's actions alleged herein were directed at and felt by Plaintiff Neogen in the City of Lexington, County of Fayette, Commonwealth of Kentucky, within this judicial district and Lexington jury division.

9.     Defendant Otero is, and at all times relevant hereto has been, an employee of DEA and his principle place of business is in the City of Louisville, County of Jefferson, Commonwealth of Kentucky.

10.     The effects of Defendant Otero's actions alleged herein were directed at and felt by Plaintiff Neogen in the City of Lexington, County of Fayette, Commonwealth of Kentucky, within this judicial district and Lexington jury division.

11.     Defendant Collier is, and at all times relevant hereto has been, an employee of DEA and his principle place of business is in the District of Columbia

12.     The effects of Defendant Collier's actions alleged herein were directed at and felt by Plaintiff Neogen in the City of Lexington, County of Fayette, Commonwealth of Kentucky, within this judicial district and Lexington jury division.

13.     Defendants Settles and Sower, and Otero all performed their official duties in City of Lexington, County of Fayette, Commonwealth of Kentucky, within this judicial district and jury division.

14.     A substantial part of the events or omissions giving rise to the claims alleged herein occurred in the City of Lexington, County of Fayette, Commonwealth of Kentucky, within this judicial district and jury division. In addition, a substantial part of property that is at issue in this action is situated within this judicial district and jury division.

15.     This Court has exclusive subject-matter jurisdiction of this cause by virtue of the presence of a federal question, including under 21 U.S.C. § 842, regulations promulgated

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

3

thereunder, and the United States Constitution, pursuant to 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 2201.

16.     This Court has general *in personam* jurisdiction over Defendants in this cause.

17.     This Court has limited or specific *in personam* jurisdiction over Defendants in this cause.

18.     Venue is properly laid in this federal judicial district, pursuant to 28 U.S.C. §1391(b)(2) and (e)(2).

19.     The amount in controversy exceeds the sum of $75,000.00.

20.     Plaintiff Neogen reserves the right to amend its Complaint to join other parties, such as other DEA agents, and/or theories of relief, as further facts are adduced through investigation and/or formal discovery in this cause, as may be appropriate and warranted under the circumstances.

## GENERAL ALLEGATIONS

21.     Plaintiff Neogen reaffirms and realleges the allegations set forth in paragraphs 1 through 20 above as if fully set forth herein.

22.     Plaintiff Neogen was founded in 1982 with two employees and now has more than 375 employees in various locations around the United States and abroad.

23.     Plaintiff Neogen is engaged in the business of developing, manufacturing and marketing a diverse line of products dedicated to food and animal safety.

24.     In conducting business, Plaintiff Neogen operates under licensing registrations with numerous federal agencies, to-wit:  Center for Disease Control ("CDC"), the Food and Drug Administration ("FDA"), United States Department of Agriculture ("USDA"), Environmental Protection Agency ("EPA"), and the Defendant DEA.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

4

25.     Among the products that Plaintiff Neogen has manufactured and sold is an equine medicinal product sold under two brand names, to-wit: Histan-G™ and Tri-Hist.™

26.     TriHist and Histan-G are combination ephedrine products that contain the List I chemical pseudoephedrine, and therapeutically significant quantities of another active medicinal ingredient.

27.     The Tri-Hist and Histan-G product is an antihistamine used to treat horses.

28.     Pseudoephedrine is a decongestant that constricts blood vessels in the nose, lungs, and other mucus membranes, which decreases congestion and opens airways. (The version of the product used by humans is commonly known as sudafedrine.)

29.     Tri-Hist is, and at all times relevant hereto has been, manufactured at Plaintiff Neogen's Creative Drive facility in Lexington, Kentucky. Tri-Hist contains 2.11 percent (12 grams per unit) of pseudoephedrine and 2.11 percent (12 grams per unit) of pyrilamine, and is manufactured in a cornmeal base.

30.     Histan-G is an identical product with 2.11 percent pseudoephedrine and 2.11 percent pyrilamine, and was custom toll-manufactured for Plaintiff Neogen with a sucrose base by Veterinary Laboratories, Inc./Sparhawk Laboratories, Inc. ("Sparhawk/Veterinary"), a joint venture, at their facility located at 12340 Santa Fe Trail Drive, Lenexa, Kansas.

31.     The presence of pseudoephedrine, as a List I chemical, in the product known as Tri-Hist and Histan-G, subjects Plaintiff Neogen to certain regulatory provisions of the Comprehensive Drug Abuse and Control Act of 1970 ("Control Act"), 21 U.S.C. § 842.

32.     On or about February 4, 2004, Defendants Settle and Sower, who were and are DEA agents, conducted an unannounced inspection of Plaintiff Neogen's facilities in Lexington, Kentucky.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

5

33.     Since Plaintiff Neogen always fully cooperates with government agencies and, since it had absolutely no concerns whatsoever that it could be in violation of any law or regulation, the Defendants Settle and Sower were given complete and unfettered access and full cooperation during their inspection.

34.     More than two months later, Plaintiff Neogen's President and Chief Executive Officer, James L. Herbert, received a letter dated April 12, 2004 from the Office of the United States Attorney for the Eastern District of Kentucky alleging that Defendants Settle and Sower "found record-keeping deficiencies concerning your List I chemicals at your Lexington, Kentucky facilities" and further alleging that this constituted violations of the Control Act and certain regulations thereunder. (Exhibit 1).

35.     Plaintiff Neogen's Vice President for the Lexington operation, Terri Morrical, received a similar letter also dated April 12, 2004. (Exhibit 2.)

36.     The letters from the Office of the United States Attorney made reference to alleged violations of "21 U.S.C. § 842(a)(10), 21 U.S.C. § 843, 21 C.F.R. § 1309(a), 21 C.F.R. § 1309.22, 21 C.F.R. § 23 [sic], and 21 C.F.R. § 1310.06." (Exhibit 1.)

37.     Plaintiff Neogen made diligent and repeated efforts to ascertain the scope and specifics of the alleged violations through correspondence, telephone discussions, and meetings with the Office of the United States Attorney and Defendant DEA's representatives, including Defendants Settle and Otero.

38.     Unfortunately, the grounds, bases, and explanations advanced by Defendant DEA and its agents concerning the nature of the alleged violations have continually shifted and changed during the past twenty (20) months.

39.     Notwithstanding the evidence, explanations, and reasoning provided by Plaintiff Neogen as to why the DEA agents were confused as to the facts and law, and why

FRASER TREBILCOCK DAVIS & DUNALP, P.C. LAWYERS LANSING, MICHIGAN 48933

6

there was no basis for alleging any violations of the Control Act or the regulations promulgated thereunder, Defendant DEA continues to maintain that Plaintiff Neogen somehow violated the Control Act and regulations and is subject to a civil penalty.

40.     On April 20, 2004, Defendants Settle and Sower were scheduled to inspect Plaintiff Neogen's Lexington facilities for the purpose of approving its request for the new distribution registration which Defendant DEA had claimed was required for Neogen's new facility located at Nandino Boulevard. However, just before Defendants Settle and Sower were about to conduct that inspection, the Office of the United States Attorney for the Eastern District of Kentucky specifically instructed them to not process or take steps to approve that particular registration for Plaintiff Neogen until that Office had first extracted a settlement (presumably a monetary settlement) from Neogen in connection with the alleged violations of the Control Act.

41.     Until recently, Plaintiff Neogen had its Histan-G product custom toll-manufactured exclusively by Veterinary/Sparhawk.

42.     Defendant DEA, and Defendants Settle and/or Sower, instructed or caused other DEA agents to contact Sparhawk/Veterinary in Kansas and make clear that DEA wanted it to cease manufacturing Histan-G for Neogen. Defendants made not so subtle or veiled threats that DEA would cause Sparhawk/Veterinary serious problems, harassment, and inconvenience unless it agreed to stop manufacturing the Histan-G product containing pseudoephedrine for Neogen.

43.     Defendants' efforts to intimidate Sparhawk/Veterinary and force it to shut down its manufacture of Histan-G for Plaintiff Neogen were successful. Sparhawk/Veterinary advised Plaintiff Neogen that it could not afford the problems and harassment to which it would be subjected if it continued to manufacture Histan-G, so it was ceasing to manufacture that product.

44.     After Defendants forced Sparhawk/Veterinary to stop manufacturing Histan-G, Plaintiff Neogen was unsuccessful in finding another company to toll-manufacturer the product.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

7

45.     Consequently, Plaintiff Neogen has been forced to discontinue its Histan-G branded product.

46.     To manufacturer its Tri-Hist product at its Lexington facilities, Plaintiff Neogen must purchase the pseudoephedrine from other sources.

47.     In late 2004, Plaintiff Neogen placed an order to purchase pseudoephedrine from Zeta Pharmaceuticals, Inc. "(Zeta"), located in New Brunswick, New Jersey, for use in manufacturing Tri-Hist at its Lexington, Kentucky facilities for which Neogen had a DEA registration and license to manufacture and distribute the product.

48.     On December 15, 2004, Zeta submitted a request to Defendant DEA for a Letter of No Objection ("LONO") to sell 275 kg. of pseudoephedrine to Plaintiff Neogen. (Exhibit 3.)

49.     On January 7, 2005, Defendant DEA, by Defendant Collier, wrote a letter to Zeta falsely and maliciously stating that: "DEA has grounds to believe that the proposed importation may be subject to diversion to the illicit market by the downstream system and, as such, is declining to sign a LONO for this importation." (Exhibit 4.)  Thus, Defendants DEA and Collier claimed they had "grounds" to believe that if the pseudoephedrine was sold to Plaintiff Neogen it would be unlawfully diverted to criminals for illicit purposes.

50.     On January 31, 2005, Plaintiff Neogen's Vice President, Terri Morrical, wrote a letter to Defendant Collier complaining that the accusations against Neogen (which apparently were related by Defendant Otero) were false, and urgently requesting that he reconsider the decision to deny Zeta a LONO.  (Exhibit 5.)  Neither Defendant Collier nor anyone else from Defendant DEA ever responded to Morrical's letter.

51.     Defendants conspired and engaged in a pattern of activities designed to force Plaintiff Neogen to cease manufacturing and selling its equine medicinal products containing pseudoephedrine.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

8

## COUNT I
## DEFAMATION/LIBEL AND SLANDER

52.      Plaintiff Neogen reaffirms and realleges the allegations set forth in paragraphs 1 through 51 above as if fully set forth herein.

53.      Defendants DOJ, DEA and Collier falsely and maliciously wrote and/or published to third parties false and defamatory statements of any concerning Plaintiff Neogen, including the following contained in a letter to Zeta:

> "DEA has grounds to believe that the proposed importation may be subject to diversion to the illicit market by the downstream system and, as such, is declining to sign a LONO for this importation."

(Exhibit 4.)

54.      The above-published statement and other identical or similar statements which Defendants have published to third parties are defamatory on their face and are actionable *per se* because the statements are incompatible with Plaintiff Neogen's business, trade and/or professional reputation, practice and livelihood, and because the statements constitute an imputation of a criminal offense.

55.      The above-referenced and quoted published statement, and other identical or similar statements, which Defendants have published to third parties are scandalous and defamatory in that Defendants falsely accuse Plaintiff Neogen of participating in or allowing the chemical at issue to be diverted for unlawful purposes.

56.      Defendants have made these false and defamatory statements with malice and for the purpose of harming Plaintiff Neogen, including by threatening and impeding suppliers and manufacturers from doing lawful business with Neogen.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

57.     At the time Defendants made the false and defamatory statements of and concerning Plaintiff Neogen, Defendants knew that Neogen was engaged in business and had maintained a good reputation.

58.     Defendants knew, or should have known, at the times it made the afore-referenced statements of and concerning Plaintiff Neogen that they were false.

59.     Defendants' statements of and concerning Plaintiff Neogen were made intentionally, with a reckless disregard for the truth, and/or with malice, bad faith and ill will with the intent to inflict and cause harm to Neogen.

60.     Although Plaintiff Neogen promptly contacted Defendants DOJ, DEA and Collier in writing concerning these false and defamatory statements, Defendants failed to retract their false and defamatory statements of and concerning Neogen.  (Exhibit 5.)  However, Defendants have failed and refused to make any such retraction or correct their false statements.

61.     As a direct and proximate result of Defendants' publication of the above referenced false and defamatory statements, and other identical or similar statements to third parties, Plaintiff Neogen has suffered damages, including, but not limited to, damage to its business reputation in the marketplace and among the public, loss of business, loss of current and/or potential customers, and loss of economic gain, including lost profits.

62.     As a direct and proximate result of Defendants' publication of the above-referenced false and defamatory statements, and other identical or similar statements, to third parties, Plaintiff Neogen has suffered special damages, including, but not limited to, the loss of its ability to manufacturer and sell its Histan-G branded product, the loss of the use of the trade name Histan-G, and additional damages related thereto.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

10

63.     As a result of Defendants' failure to retract their false and defamatory statements of and concerning Plaintiff Neogen, it has sustained increased injury and damages attributable to its sense of indignation and outrage.

WHEREFORE, Plaintiff Neogen respectfully requests that this Honorable Court enter judgment in its favor and against Defendants in whatever amount to which it may be found entitled for compensatory and special damages, plus exemplary and punitive damages, together with costs and attorney fees thereon pursuant to 28 U.S.C.§ 2312 or otherwise, and such other and further relief as may be appropriate.

## COUNT II
## TORTIOUS INTEREFENCE WITH BUSINESS EXPECTANCIES

64.     Plaintiff Neogen reaffirms and realleges the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

65.     Plaintiff Neogen had a reasonable and valid economically advantageous business expectancy relating to the marketing and sale of its Histan-G and Tri-Hist products.

66.     Defendants knew that Plaintiff Neogen was selling its Histan-G and Tri-Hist products to the equine market throughout the United States.

67.     Defendants intentionally interfered with Plaintiff Neogen's advantageous business relationships and expectancies with its suppliers by making false and defamatory statements them about Neogen and by attempting to prevent suppliers from selling pseudoepherine to Neogen, all done with malice and for the express purpose of interfering with and/or preventing the formation of business relationships with Plaintiff Neogen.

68.     Defendants intentionally interfered with Plaintiff Neogen's advantageous business relationships and expectancies with its toll-manufacturer by threatening to cause it

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

11

problems unless if ceased manufacturing Histan-G for Neogen, all done with malice and for the express purpose of interfering with that important business relationship with Plaintiff Neogen.

69.    Defendants' intentional interference with Plaintiff Neogen's business expectancies has induced or caused toll-manufacturers and/or suppliers to delay, terminate, and/or refrain from business relationships with Plaintiff Neogen in connection with its Histan-G and Tri-Hist products.

70.    As a direct and proximate result of Defendants' intentional interference with Plaintiff's Neogen's advantageous business relationships and business expectancies, Neogen has suffered and will continue to suffer damages, including but not limited to, damage to its business reputation and goodwill, loss of business and reasonable and valid business expectancy, and loss of economic gain and profits.

WHEREFORE, Plaintiff Neogen respectfully requests that this Honorable Court enter judgment in its favor and against Defendants in whatever amount to which it may be found entitled for compensatory and special damages, plus exemplary and punitive damages, together with costs and attorney fees thereon pursuant to 28 U.S.C. § 2412 or otherwise, and such other and further relief as may be appropriate.

## COUNT III
## TORTIOUS INTEREFENCE WITH CONTRACT

71.    Plaintiff Neogen reaffirms and realleges the allegations set forth in paragraphs 1 through 70 above as if fully set forth herein.

72.    Defendants intentionally and unjustifiably interfered with Plaintiff Neogen's business contracts with at least one of its manufacturers and at least one of its suppliers by making false and defamatory statements to them of and concerning Neogen, and by refusing and delaying the issuance of LONO to Zeta.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

12

73.    Defendants committed such actions with malice and for the express purpose of instigating breaches of Plaintiff Neogen's business contracts.

74.    Defendants' intentional interference with Plaintiff Neogen's business contracts has induced at least one third party to back-out and/or terminate its business contracts with Neogen, and delayed the performance of the contract with Zeta.

75.    As a direct and proximate result of Defendants' intentional interference with Plaintiff Neogen's advantageous business contracts, its has suffered and will continue to suffer damages and special damages, including but not limited to, damage to its business reputation, loss of business, loss of advantageous business contracts and customers, the loss of its ability to manufacture and sell its Histan-G branded product, the loss of the use of the trade name Histan-G, and additional damages and loss of economic gain.

WHEREFORE, Plaintiff Neogen respectfully requests that this Honorable Court enter judgment in its favor and against Defendants in whatever amount to which it may be found entitled for compensatory and special damages, plus exemplary and punitive damages, together with costs and attorney fees thereon pursuant to 28 U.S.C. § 2412, and such other and further relief as may be appropriate.

## COUNT IV
## VIOLATION OF CONSTITUTIONAL AND
## OTHER FEDERALLY PROTECTED RIGHTS

76.    Plaintiff Neogen reaffirms and realleges the allegations set forth in paragraphs 1 through 75 above as if fully set forth herein.

77.    Plaintiff Neogen had a federally protected liberty and property interests in preserving its reputation as a legitimate company engaged in the lawful business of manufacturing and selling its equine pseudoephedrine products, and had a property interest in said rights.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

13

78. Defendants were and are fully aware that Plaintiff Neogen, a regulated entity, has a constitutional liberty and property right to be free from hindrance in its ability to purchase and manufacture equine products containing the List 1 chemical pseudoephrine.

79. It was well-known the Defendants that they may not besmirch or impugn the reputations of regulated entities such as Plaintiff Neogen without affording due process of law. This is common knowledge among Defendants because, *inter alia*, DEA has been criticized by the courts in the past for engaging in such improper and unlawful conduct.

80. Despite their knowledge of the law and of Plaintiff Neogen's constitutional Fifth Amendment due process rights to acquire, manufacture, and sell equine products containing the List 1 chemical pseudoephrine.

81. Defendants purposely, intentionally, and knowingly interfered with Plaintiff Neogen's rights by blocking and interfering with manufacturer(s) and seller(s) doing business with Neogen. This was accomplished by Defendants, acting under color or law, by unfairly stigmatizing Neogen and sullying its reputation, interfering with Neogen's ability to acquire pseudoephrine, and interfering with Neogen's ability to have its product toll-manufactured, all without notice and an opportunity to be heard.

82. Defendants engaged in a series of concerted actions to intentionally and wrongfully deprive Plaintiff Neogen of those federally protected rights and property interests without due process of law in violation of the United State Constitution.

83. As a direct and proximate result of Defendants' wrongful actions, Plaintiff Neogen has suffered and will continue to suffer damages and special damages, including but not limited to, damage to its business reputation, loss of business, loss of advantageous business contracts and customers, the loss of its ability to manufacture and sell its Histan-G branded

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

14

product, the loss of the use of the trade name Histan-G, and additional damages and loss of economic gain.

WHEREFORE, Plaintiff Neogen respectfully requests that this Honorable Court enter judgment in its favor and against Defendants in whatever amount to which it may be found entitled for compensatory and special damages, plus exemplary and punitive damages, together with costs and attorney fees thereon pursuant to 28 U.S.C. § 2412 or otherwise, and such other and further relief as may be appropriate.

## COUNT V
## CONSPIRACY

84.     Plaintiff Neogen reaffirms and realleges the allegations set forth in paragraphs 1 through 83 above as if fully set forth herein.

85.     Defendants combined, conspired and agreed among themselves, and perhaps with others, to use their authority and act under color of law to harm Plaintiff Neogen by defaming it, tortiously interfering with its contracts and business relationships, and to unlawfully pressure it out of the equine pseudoephedrine business.

86.     As a direct and proximate result of Defendants' unlawful conspiracy, Plaintiff Neogen has suffered and will continue to suffer damages and special damages, including but not limited to, damage to its business reputation, loss of business, loss of advantageous business contracts and customers, the loss of its ability to manufacture and sell its Histan-G branded product, the loss of the use of the trade name Histan-G, and additional damages and loss of economic gain.

WHEREFORE, Plaintiff Neogen respectfully requests that this Honorable Court enter judgment in its favor and against Defendants in whatever amount to which it may be found entitled for compensatory and special damages, plus exemplary and punitive damages, together

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

with costs and attorney fees thereon pursuant to 28 U.S.C. § 2412 or otherwise, and such other

and further relief as may be appropriate.

## COUNT VI
## INJUNCTIVE RELIEF

87.     Plaintiff Neogen reaffirms and realleges the allegations set forth in paragraphs 1

through 86 above as if fully set forth herein.

88.     To prevent further violations of Plaintiff Neogen's rights by Defendants, for

which there is no adequate remedy at law, a permanent injunction is necessary

WHEREFORE, Plaintiff Neogen respectfully requests that this Honorable Court enter a

permanent injunction against Defendants, and those acting in concert with them, enjoining and

restraining them, under pain of contempt, from:

    A.     Blocking or causing the blockage of proposed imports of List I chemicals
to be imported on Neogen's behalf by means not set forth in 21 U.S.C. §
971 and the accompanying regulations;  and

    B.     Communicating to List I companies, through advice or opinions,
hypothetical or otherwise, or by any other means, to not sell or
manufacturer List I chemicals to or for Neogen or that DEA disapproves
of such manufacture or sales.

Plaintiff Neogen further seeks an award of its costs and attorney fees pursuant to 28 U.S.C. §

2412 or otherwise, together with such other and further relief as may be appropriate.

## COUNT VII
## DECLARATORY JUDGMENT

89.     Plaintiff Neogen reaffirms and realleges the allegations set forth in paragraphs 1

through 88 above as if fully set forth herein.

90.     Since April 12, 2004, Defendant DEA has maintained that Plaintiff Neogen has

allegedly violated the Control Act and regulations thereunder.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

91.     Defendants DOJ and DEA have specifically and repeatedly threatened to bring a civil court action against Plaintiff Neogen for this alleged infraction.

92.     The allegations, demands, and threats by Defendants DOJ and DEA have given rise to a case of actual controversy within the jurisdiction of this Court, pursuant to 28 U.S.C. § 2201.

93.     Plaintiff Neogen denies that it has violated the Control Act or any regulation thereunder.

94.     So long as these allegations, demands, and threats by Defendants DOJ and DEA remain pending and unresolved, Plaintiff Neogen will likely suffer harm to its reputation, may also be subjected to unjustified and punitive denials of other licenses, permits, and registrations, and further efforts to prevent it from manufacturing and selling products containing pseudoephedrine, all of which would result in severe financial damages to Neogen.

95.     Plaintiff Neogen need not be forced to wait in anticipation of legal action instituted at the convenience of Defendants DOJ and DEA.

96.     To resolve the legal and factual questions raised by Defendants DOJ and DEA, and to afford relief from the uncertainty and controversy that Defendants assertions have precipitated, Plaintiff Neogen is entitled to a declaratory judgment of its rights under 28 U.S.C. §§ 2201-2202 that it has not violated the Control Act or regulations thereunder.

WHEREFORE, Plaintiff Neogen Corporation respectfully request that this Honorable Court issue an order and judgment declaring that: (a) Plaintiff Neogen has not violated the Comprehensive Drug Abuse and Control Act of 1970 or any regulations promulgated thereunder; (b) Defendants have acted unlawfully and violated Plaintiff Neogen's rights; and (c) Plaintiff Neogen is entitled to an award of attorney fees and costs pursuant to 28 U.S.C. § 2412 or otherwise.

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

17

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff Neogen Corporation, by and through its attorneys, and, pursuant

to F. R. Civ. P. 38, hereby demands a trial by jury on all claims triable to a jury.

*Respectfully submitted,*

FRASER TREBILCOCK DAVIS & DUNLAP, P.C.
Attorneys for Plaintiff Neogen Corporation

December 5, 2005                    By: _____

Mark R. Fox
1000 Michigan National Tower
124 West Allegan Street – Suite 1000
Lansing, Michigan 48933
(517) 482-5800 - Telephone
(517) 482-0887 – Facsimile
mfox@fraserlawfirm.com

FRASER
TREBILCOCK
DAVIS &
DUNALP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

18