**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

**CIVIL ACTION NO. 05-506-JBC**

**NEOGEN CORPORATION,**                                        **PLAINTIFF,**

**V.**                     **MEMORANDUM OPINION AND ORDER**

**UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,**           **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the defendants' motion to substitute the United States as defendant (DE 16), the defendants' motion to dismiss the plaintiff's complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure (DE 17), and the plaintiff's motion to strike (DE 31). The court, having reviewed the record and being otherwise sufficiently advised, will defer its ruling on the defendants' motion to substitute pending an evidentiary hearing; grant in part and deny in part the defendants' motion to dismiss; and deny as moot the plaintiff's motion to strike.

**I. Factual Background**

The plaintiff Neogen Corporation ("Neogen") is a Michigan corporation engaged in the business of developing, manufacturing, and marketing products with food safety testing and animal health applications. One of Neogen's products is an equine antihistamine product which is marketed under two brand names, Histan-G and Tri-Hist. Tri-Hist is manufactured at Neogen's facility in Lexington, KY; Histan-G is custom toll-manufactured for Neogen by Veterinary Laboratories,

Inc./Sparhawk Laboratories, Inc. ("Sparhawk") in Lenexa, Kansas.  An active

ingredient of both products is a decongestant called pseudoephedrine.  The use of

pseudoephedrine in the manufacture of Histan-G and Tri-Hist subjects Neogen to

certain regulatory provisions of the Comprehensive Drug Abuse and Control Act of

1970, 21 U.S.C. § 842 ("Control Act").

In February of 2004, Paul Settle ("Settle") and Patrick Sowers ("Sowers"),

DEA employees and defendants here, conducted an unannounced inspection of

Neogen's Lexington facility.  Two months later, Neogen received a letter from the

Office of the United States Attorney for the Eastern District of Kentucky which

stated that Settle and Sowers had "found record-keeping deficiencies" concerning

certain List I chemicals at the Lexington plant and that these deficiencies

constituted Control Act violations.  Neogen alleges that it was never informed as to

the precise nature of these violations, despite repeated attempts to contact the

U.S. Attorney's Office and the United States Drug Enforcement Administration

("DEA").  On April 20, 2004, Settle and Sowers were scheduled to inspect

Neogen's Lexington plant for the purpose of approving Neogen's request for a new

distribution registration which the DEA claimed was required.  Neogen claims that,

before the inspection could take place,  the U.S. Attorney's Office instructed Settle

and Sowers not to perform the inspection until Neogen's alleged Control Act

violations had been resolved.  Neogen further asserts that the DEA, in concert with

Settle and Sowers, caused Sparhawk to cease production of Histan-G for Neogen.

2

In May of 2004, Neogen placed an order for the importation of pseudoephedrine with Zeta Pharmaceuticals, Inc. ("Zeta"); this pseudoephedrine was to be used in the production of Tri-Hist at Neogen's Lexington facility.  When Zeta applied to the DEA for a Letter of No Objection ("LONO") to the shipment, the DEA, in a letter signed by defendant Scott Collier ("Collier"), informed Zeta that the DEA would not issue the LONO because it had grounds to believe that the "importation may be subject to diversion to the illicit market."

On December 7, 2005, Neogen filed the current suit against the defendants United States Department of Justice ("DOJ"), DEA, Settle, Sowers, Collier, and Robert Otero ("Otero"), alleging claims for defamation, libel, and slander; tortious interference with business expectancies; tortious interference with contract; and conspiracy.  The complaint also sought injunctive and declaratory relief against the defendants.

**II. Standard of Review**

Rule 12(b)(6) dismissal can be granted only when the defendants establish beyond a reasonable doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief.  *Hiser v. City of Bowling Green*, 42 F.3d 382, 383 (6th Cir. 1994).  The court must consider the pleadings in the light most favorable to the plaintiff and take the factual allegations in the complaint as true. *Jones v. Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  The plaintiff has also attached to its complaint copies of letters and facsimile transmissions; because these

documents are referred to in, attached to, and central to the plaintiff's complaint, they are part of the pleadings for all purposes.  Fed. R. Civ. P. 10(c).   Therefore, consideration of them does not convert the motion to dismiss into a motion for summary judgment.

### III. Legal Analysis

In their motion to dismiss and motion to substitute, the defendants argue that the individual defendants are immune from suit on Neogen's state law claims because the United States is the proper defendant on those claims under the Federal Tort Claims Act ("FTCA"); that, assuming the United States is substituted as a defendant on the state law claims, it is fully protected by the doctrine of sovereign immunity; that sovereign immunity bars all claims for damages against the DOJ, the DEA, and the individual defendants in their official capacities; that this court lacks personal jurisdiction over Collier in his individual capacity; and that the individual defendants are protected by the defense of qualified immunity.  The defendants further claim that Neogen has not shown it is entitled to injunctive or declaratory relief.  Neogen contests these allegations and, in its motion to strike, claims that the defendants impermissibly introduced new arguments and evidence along with their reply to Neogen's response to the motion to dismiss.

### A. Substitution of the United States as Defendant in Place of the Individual Defendants

The Westfall Act provides that a suit against the United States pursuant to the FTCA is the exclusive remedy for injuries "resulting from the wrongful act or

omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1).  "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment . . ., any civil action or proceeding commenced upon such claim shall be deemed an action against the United States under the provisions of this title . . ., and the United States shall be substituted as the party defendant." *Id.* at (d)(1).  Attached to the defendants' motion to substitute the United States as party defendant in place of the individual defendants was a certification by the United States Attorney[1] that the individual defendants were acting within the scope of their employment at the time the events giving rise to this suit took place.  The defendants argue that this certification is sufficient to warrant the substitution of the United States and the dismissal of the individual defendants on Neogen's state law tort claims.  The plaintiff claims in response that the certification was inadequately supported and that the individual defendants were not acting within the scope of their employment in their dealings with Neogen and are therefore unprotected by the Westfall Act.[2]

―――――――――――――――

[1]The Attorney General has delegated to the United States Attorney the authority to provide the § 2679(d) certification.  *See* 28 C.F.R. § 15.3; *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996).

[2]In its response to the defendants' motion to dismiss, the plaintiff also argues that the defendants' motion to substitute should be denied for failure to comply with Local Rule ("LR") 7.1(a).  LR 7.1(a) requires all non-routine motions to be "accompanied by a supporting memorandum," and states that failure to include such a memorandum may be grounds for denial of the motion.  Since the grounds for the defendants' motion to substitute were discussed at length in its

5

Despite the mandatory language used in § 2679(d)(2), a U.S. Attorney's certification that a government employee was acting in the scope of his or her employment does not conclusively establish that the substitution of the United States in place of that employee is appropriate. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). A plaintiff is permitted to challenge the certification and, consequently, the substitution of the United States for the named defendants. *Gilbar v. United States*, 108 F. Supp. 2d 812, 816 (S.D. Ohio 1999). However, a certification by the United States Attorney provides prima facie evidence that the employee was acting within the scope of his or her employment. *RMI*, 78 F.3d at 1143.

When challenging a certification decision, a plaintiff must present evidence from which a district court reasonably could find that the original defendant-employee acted outside the scope of his employment. *Gilbar*, 108 F. Supp. 2d at 816; *see also Singleton v. United States*, 277 F.3d 864, 871 (6th Cir. 2002) ("A plaintiff can defeat a motion to dismiss by presenting evidence that raises a genuine issue of material fact on the scope-of-employment issue."). When a plaintiff produces evidence controverting the government's certification decision, a district court must conduct an evidentiary hearing in order to determine whether the United

--------

memorandum in support of its motion to dismiss, and the two motions were filed on the same day, the court finds that the defendants' lack of strict compliance with LR 7.1(a) was excusable and, given the related nature of its two motions, sensible. Denying a motion to substitute in this situation would unnecessarily place form over substance, and the court thus rejects the plaintiff's invitation to do so.

6

States has been properly substituted as a defendant. *Rutkofske v. Norman,* No. 95-2038, 1997 WL 299382, at *4 (6th Cir. June 4, 1997); *Gilbar*, 108 F. Supp. 2d at 816; *see also Singleton*, 277 F.3d at 870 ("[W]hen a district court is reviewing a certification question under the Westfall Act, it must identify and resolve disputed issues of fact necessary to its decision before entering its order.") (citation omitted).  No hearing is required when, even if the plaintiff's assertions are true, the complaint allegations establish that the employee was acting within the scope of his or her employment. *RMI*, 78 F.3d at 1143.

Whether an employee was acting within the scope of his employment is a question of law, made in accordance with the law of the state where the conduct occurred. *Singleton*, 277 F.3d at 870 (citation omitted).  Since the events giving rise to this complaint occurred in Kentucky, the court will look to Kentucky law in resolving the scope-of-employment issue.  In determining whether an employee's action is within the scope of employment, Kentucky courts consider the following factors: (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spatial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, could have been anticipated in view of the employee's duties. *Coleman v. United States*, 91 F.3d 820, 823-24 (6th Cir. 1996).  The Kentucky Supreme Court recently held, however, that the focus of the court in determining

scope-of-employment issues should be placed on the employee's motive for his conduct, not the foreseeability of that conduct. *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). If the servant acts from purely personal motives which are in no way connected with the employer's interests, he is considered to have departed from his employment. *Id.*

The plaintiff has alleged that the individual defendants engaged in a pattern of harassment and interference with the plaintiff and its business partners, Sparhawk and Zeta, in an attempt to harm and perhaps destroy its business. Neogen claims these actions were intentional and undertaken in the pursuit of a "personal vendetta" against it. *See* Affidavit of James L. Herbert, ¶ 5 ("These agents have taken it upon themselves to 'outlaw' pseudoephedrine products contrary to law . . . ."). In essence, the plaintiff argues that, while the defendants acted under color of law, their true intent was to damage Neogen. Assuming this statement is correct, as a court must do when considering a motion to dismiss, the court would be compelled to find that the defendants' actions were neither performed in furtherance of the government's business nor carried out with the government's interests in mind. Under *Patterson*, such a finding would require the conclusion that the defendants were outside the scope of their employment in their dealings with Neogen. Thus, the court holds that the plaintiffs have met their burden of creating a genuine issue of fact as to whether the individual defendants acted in the scope of their employment.

Pursuant to the Sixth Circuit precedent espoused in *Rutofske* and *Singleton*, the court will issue an order that an evidentiary hearing be held to resolve whether the challenged actions of the individual defendants were truly within the scope of their employment.  Pending that hearing, the court will defer its ruling on the defendants' motion to substitute the United States in place of the individual defendants on the plaintiff's state law tort claims, Counts I, II, III, and V of the complaint.

### B. Sovereign Immunity

The defendants argue that all claims for damages by Neogen against the DOJ, the DEA, and the individual defendants in their official capacities are barred by the doctrine of sovereign immunity.  As a general principle, the United States and its agencies are not liable for monetary damages unless there is an unambiguous waiver of sovereign immunity as to those damages, *see Lane v. Pena,* 518 U.S. 187, 192 (1996); *FDIC v. Meyer,* 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  A waiver of the government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign, *Lane,* 518 U.S. at 192, and must be definitely and unequivocally expressed.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  The doctrine of sovereign immunity also bars suits for money damages against officers and agents of the United States in their official capacities.  *Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002).

9

In Count IV of its complaint, Neogen claims the defendants violated its rights under the Constitution by denying it the right to acquire and manufacture property and by besmirching its reputation without due process of law; the complaint seeks compensatory and special damages to remedy the alleged injury. As sovereign immunity bars claims for constitutional torts against the United States and federal employees in their official capacities, *see Loftin v. United States*, No. 95-2150, 1995 WL 739859, at *2 (8th Cir. Dec. 15, 1995) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)), the court finds that Neogen's constitutional claims must be dismissed as to the DOJ, the DEA, and the individual defendants in their official capacities.

The plaintiff has also asserted four state law tort claims against the government agencies and individual defendants in their official capacities and has requested damages based on those causes of action. Although the FTCA establishes a limited waiver of the sovereign immunity of the United States in tort actions, *see Huffman v. United States*, 82 F.3d 703, 705 (6th Cir. 1996), a claim for relief against the government cannot be maintained if one of the Act's exceptions applies to that claim. *Garbarino v. United States*, 666 F.2d 1061, 1065 (6th Cir. 1981). These exceptions are listed in 28 U.S.C. § 2680, which explicitly removes "any claim arising out of . . . libel, slander, . . . or interference with contract rights" from Congress's waiver of sovereign immunity under the FTCA. *Id.* at § 2680(h); *see also Singleton*, 277 F.3d at 872 (dismissing defamation claim

10

based on § 2680(h)); *Selland v. United States,* 966 F.2d 346, 347 (8th Cir. 1992)

(holding that claim for intentional interference with contractual relations is not

within the scope of the FTCA).  Although the exception listed in § 2680(h) refers

to "interference with contract rights," the tort of interference with business

relationships falls within this exclusion. *Martinek v. United States*, 254 F. Supp. 2d

777, 790 (S.D. Ohio 2003) (citing *Small v. United States*, 333 F.2d 702, 704 (3d

Cir. 1964)).  As these claims have been excepted from the FTCA's explicit waiver

of sovereign immunity, and Neogen has not relied on any other express waiver by

the United States, the court holds that the plaintiff's claims for defamation, libel

and slander, interference with contract rights, and interference with business

expectancies must be dismissed as against the DOJ, the DEA, and the individual

defendants in their official capacities on sovereign immunity grounds.

In Count V, Neogen alleges a conspiracy by the defendants to commit each

of the above-described torts.  This claim also must fail.  The plain language of §

2680(h) states that any claim "arising out of" the listed causes of action is

excepted from the FTCA.  Certainly a claim for conspiracy to commit defamation,

tortious interference with contract rights, or tortious interference with business

expectancies would arise out of those torts.  The gist of the action is not the

conspiracy charged, but the tort working the damage. *James v. Evans*, 149 F.

136, 140 (3d Cir. 1906); *see also FSLIC v. Williams*, 599 F. Supp. 1184, 1200-01

(D. Md. 1984) ("The fact that the defendants have separated the allegations of

misrepresentation from the charge of conspiracy does not render § 2680(h) inapplicable . . . .").  As this is the case, the court finds that Congress has not waived the sovereign immunity of the United States with respect to the tort of conspiracy to commit defamation, interference with contract rights, or interference with business relations.

In sum, the court holds that Counts I, II, III, IV, and V of Neogen's complaint are barred by the doctrine of sovereign immunity insofar as they are asserted against the DOJ, the DEA, and the four individual defendants in their official capacities.  These claims are therefore dismissed as to those defendants.

The defendants also argue in their motion to substitute that, upon the substitution of the United States as defendant on the plaintiff's state law claims, the United States is protected by sovereign immunity, and the state law claims must therefore be dismissed.  The court has already held that genuine issues of fact exist as to whether the substitution of the United States in place of the individual government defendants is appropriate and will schedule a hearing to resolve the issue.  In the event, however, that the court finds that substitution of the United States is appropriate after the hearing, the court will also order that Counts I, II, III, and V be dismissed in their entirety, as the United States would be entitled to sovereign immunity on these claims.[3]

---

[3]Because the Westfall Act expressly does not apply to a claim "which is brought for a violation of the Constitution of the United States," 28 U.S.C. § 2679(b)(2)(A), the plaintiff's constitutional claims alleged in Count IV of the complaint would be unaffected by the substitution of the United States in place of

*C. Personal Jurisdiction over Collier*

Once a defendant challenges personal jurisdiction, the plaintiff bears the

burden of establishing that jurisdiction exists. *Jude v. First National Bank of*

*Williamson*, 259 F. Supp. 2d 586, 589 (E.D. Ky. 2003). This burden must

ordinarily be met by a preponderance of the evidence, *Dean v. Motel 6 Operating*

*L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998), but when a district court does not

conduct an evidentiary hearing on the issue of personal jurisdiction in considering a

motion to dismiss on that basis, the plaintiff need only make a prima facie showing

of jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th

Cir. 2002). Under such circumstances, a court must view the pleadings and

affidavits in the light most favorable to the plaintiff and not consider the

controverting assertions of the defendant when deciding whether to dismiss for

lack of jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir.

2000).

An exercise of personal jurisdiction is valid only if it satisfies both the state

long-arm statute and constitutional due process requirements. *Calphalon Corp.*,

228 F.3d at 721. Since Kentucky's long-arm statute (KRS 454.210) has been

interpreted as extending to the full limits of constitutional due process, *Lexmark*

*Int'l, Inc. v. Laserland, Inc.*, 304 F. Supp. 2d 913, 915 (E.D. Ky. 2004), the two

inquiries merge and the court need only determine whether the assertion of

---

the individual defendants.

jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 627 (6th Cir. 1998).

Neogen's primary argument in favor of the constitutionality of the exercise of jurisdiction over Collier is based on the so-called "conspiracy theory" of personal jurisdiction. The conspiracy theory states that, if one co-conspirator commits acts in the forum state that would justify the forum court in exercising personal jurisdiction over it, those acts are attributed to the other co-conspirators and personal jurisdiction exists over them as well. *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592, 599 (E.D. Ky. 2006). To sustain a claim of jurisdiction under this principle, a plaintiff must allege: (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy and; (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries. *Id.* (citing *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C. Cir. 1991)). While the Sixth Circuit has neither explicitly adopted nor rejected the conspiracy test, it has indicated that a plaintiff must make some "minimal factual showing" of a non-resident's part in a conspiracy before a court can constitutionally exercise personal jurisdiction under the conspiracy test. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981)

Neogen has sufficiently pleaded all three elements of the conspiracy test. It has alleged the existence of a conspiracy and claimed that Collier took part in it

14

along with the other defendants.  Neogen has also pleaded several overt acts in furtherance of the conspiracy that allegedly occurred within the state of Kentucky, including Settle and Sowers's unscheduled inspection of Neogen's Lexington facility in which they allegedly uncovered Neogen's Control Act violations, and the DEA's purported threats issued to Sparhawk.  Finally, Neogen has made a factual claim that Collier himself took part in the conspiracy when he wrote the letter denying a LONO to Zeta.  Neogen has fulfilled its burden of making a prima facie showing of personal jurisdiction over Collier, and the defendants' motion to dismiss on that ground will be denied.[4]

### D. Qualified Immunity

In Count IV of its complaint, Neogen claims that the defendants violated its protected rights in violation of the Fifth Amendment to the United States Constitution.  Specifically, Count IV alleges that the defendants deprived Neogen of its protected liberty and property interests without due process of law by interfering with Neogen's ability to sell and manufacture pseudoephedrine products and by stigmatizing Neogen to the point that the lawful transaction of its business became difficult.  The defendants contend that the individual defendants are protected in their individual capacity by the doctrine of qualified immunity as to the plaintiff's

---

[4]The court does remind the parties, however, that Neogen still bears the burden of proving personal jurisdiction over Collier by a preponderance of the evidence.  *Dean*, 134 F.3d at 1272.  The fact that it has pleaded sufficient facts to overcome a motion to dismiss on this ground does not relieve the plaintiff of this burden, as the defendants are permitted to raise jurisdictional arguments at later stages of the action as well.  *Id.*

constitutional claims.

The doctrine of qualified immunity states that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a court is forced to rule upon the qualified immunity issue, it must first determine whether the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court finds that a constitutional violation could properly be made out from the parties' submissions, the next step is to ask whether the right was clearly established. *Id.* The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202. In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. *Id.* The plaintiffs bear the ultimate burden of proving the defendants are not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

To sustain a claim for a violation of due process, a plaintiff must first demonstrate the existence of a protected liberty or property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). A person's reputation, good

16

name, honor, and integrity are among the liberty interests protected by due process, *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989), but, as the defendants correctly point out, an injury to reputation, without more, does not implicate due process. *Paul v. Davis*, 424 U.S. 693, 712 (1976). Rather, some alteration of a right or status previously recognized by law must accompany the damage to reputation. *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002). To establish a deprivation of liberty in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession. *Joelson v. United States*, 86 F.3d 1413, 1421 (6th Cir. 1996).

Neogen relies heavily on *PDK Labs, Inc. v. Reno*, 134 F. Supp. 2d 24 (D.D.C. 2001), a case strikingly similar to this one. In *PDK*, a corporation that supplied ephedrine to the plaintiff applied for and was denied a LONO by the DEA because it had grounds to believe the shipment would be diverted downstream for illegal uses. *Id.* at 28. The plaintiff filed suit, claiming a violation of due process and requesting injunctive and declaratory relief. *Id.* In its opinion, the district court denied a motion to dismiss by the defendant, stating that "it appears that a company which is labeled not worthy of being trusted with common chemicals is severely stigmatized and would appear to be entitled to some sort of notice and hearing." *Id.* at 33. The court also noted that the DEA's actions effectively precluded PDK from engaging in its "core business," producing the requisite

17

"tangible change in status" to implicate a protected liberty interest.[5]  *Id.*  The reasoning in *PDK* is persuasive, and its legal principles are consistent with those espoused by the Sixth Circuit.

Neogen has alleged that the defendants harassed and intimidated one of its suppliers in an effort to prevent it from dealing with Neogen and informed another supplier that pseudoephedrine could not be shipped to Neogen because that importation may be illegally diverted to other sources.  As a result of these alleged actions, Neogen has purportedly been hindered in its ability to manufacture Tri-Hist and forced to discontinue its Histan-G production.  Finally, not only has Neogen not been given an opportunity to argue its case at a hearing, it claims that the defendants have not even responded to Neogen's attempts to communicate with them.  If Neogen were to successfully prove its allegations, this case would present an even more compelling example of a due process violation than the facts of *PDK*, as the challenged government action would lead to a change in its legal rights and/or effectively preclude it from conducting its business.  Such a showing is sufficient to meet Neogen's burden on the first prong of the qualified immunity test at this stage of the proceedings.

Having found that the plaintiff has shown, for the purposes of the current motion to dismiss, a constitutional violation, the court must now consider whether

---

[5]The court in *PDK* did, however, hold that the plaintiff had not been deprived of a property interest, since it had no "entitlement to import List I chemicals." *PDK*, 134 F. Supp. 2d at 33.

the legal right violated is clearly established.  While the law regarding the existence of due process liberty interests is not exactly a model of clarity, the court nonetheless finds that it is sufficiently clearly established.  As the above-cited cases demonstrate, the Sixth Circuit has spoken clearly and consistently when deciding the point at which governmental action infringes on the constitutionally protected interests of injured parties.  And although *PDK* was not decided by a court in the Sixth Circuit, the near-perfect factual similarity between the alleged facts of this case and that one would alert a reasonable person in the defendants' positions that the actions claimed by Neogen are unlawful.  As the plaintiff has made a prima facie showing on both elements of the *Saucier* test for qualified immunity, the court will deny the defendants' motion to dismiss Count IV of the complaint on that ground.

### E. Injunctive and Declaratory Relief

Counts VI and VII of Neogen's complaint assert claims for injunctive and declaratory relief, respectively, against the defendants.  As a threshold matter, the defendants argue that this court is without jurisdiction to consider these claims.  In support, the defendants cite 21 U.S.C. § 877, which provides that"final determinations, findings, and conclusions of the Attorney General" under the Control Act may be reviewed only in the Court of Appeals for the District of Columbia or for the Circuit where an injured party's principal place of business is located.  The court thus construes the defendants' argument to be that: (1)

19

Congress has manifested a clear intent to limit judicial review to final agency actions taken under the Control Act and; (2) review of such actions may be maintained only in the Circuit Courts of Appeals.

The defendants' contentions are erroneous.  In *PDK*, the district court held that it had subject matter jurisdiction to consider the plaintiff's request for injunctive relief since the DEA's denial of a LONO did not represent a "final determination" within the meaning of 21 U.S.C. § 877.  *PDK,* 134 F. Supp. 2d at 29.  Moreover, in *Oregon v. Ashcroft*, the District Court for the District of Oregon held that a directive from the Attorney General was not a final determination pursuant to § 877 where the Attorney General "did not provide notice and an opportunity for comment, did not take any evidence, . . . and . . . did not produce an administrative record."  *Oregon v. Ashcroft*, 192 F. Supp. 2d 1077, 1086 (D. Or. 2002).  The court further found that, since the review provision was inapplicable to the questioned agency action, jurisdiction was proper in the district court, particularly since the development of a record would be necessary for any appellate review.

As was the case in *PDK*, the denial of the LONO in the instant case cannot be said to constitute a "final agency determination" under the Control Act.  At best, the denial was merely the initial step toward the attainment of a final agency position.  Given the lack of findings made and evidence accumulated to this point, the court also finds that the rationale for district court jurisdiction presented in

*Oregon* is equally applicable to this case.  The court therefore concludes that it is not precluded from jurisdiction over the plaintiff's claims for injunctive and declaratory relief.

 *i. Injunctive Relief*

 The Sixth Circuit has held that a party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006); *United States v. Miami University*, 294 F.3d 797, 816 (6th Cir. 2002); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067-68 (6th Cir. 1998).  An injury is not fully compensable by money damages so as to be irreparable if the nature of a plaintiff's loss makes damages difficult to calculate.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  As described in the previous section, Neogen has made out a prima facie case of a constitutional violation by the defendants.  Neogen has also alleged that the damage to its business is ongoing and that it is without an adequate remedy at law.  In *PDK*, the District Court for the District of Columbia issued an injunction on substantially the same terms as those requested by Neogen, on the basis of violations similar to those asserted by Neogen in this case.  *See PDK Labs Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 15-16 (D.D.C. 2004).  The court therefore holds that the plaintiff has stated a case for injunctive relief that is sufficient to survive a motion to dismiss.

In its reply brief, the defendants argue that, since a LONO was eventually issued to Zeta for the importation of pseudoephedrine to Neogen, it is not entitled to injunctive relief to prevent any continuing violation of its rights.  In support, the defendants have attached an affidavit from Collier.  The plaintiff vigorously objects to this argument in the reply, claiming that it is improper to introduce new arguments in a reply brief.  The court need not address this argument by the plaintiff because, taking all allegations in its complaint as true, the court finds that the plaintiff has pleaded an adequate claim for injunctive relief.  Even when considered along with the pleadings, the Collier affidavit and reply brief do not demonstrate that the plaintiff can prove no set of facts that would entitle it to relief.  Therefore, the court will deny the defendants' motion to dismiss Count VI of Neogen's complaint, the claim for injunctive relief, and will deny Neogen's motion to strike as moot.

### ii. Declaratory Judgment

The Declaratory Judgment Act allows a federal court, "in a case of an actual controversy within its jurisdiction, . . . [to] declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201. Before a court can grant declaratory relief, it must determine whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  *Blakely v. United States*, 276

F.3d 853, 872 (6th Cir. 2002).  Neogen claims that the DEA has repeatedly threatened to bring a civil court action against it; that the United States Attorney found Neogen had violated the Control Act but failed to disclose the nature of the alleged violations; and that Settle and Sowers refused to conduct an investigation pursuant to Neogen's request for a new distribution registration until these violations were resolved.  Neogen further alleges that its efforts to contact the defendants to resolve these issues have been futile.  In sum, Neogen contends that it is suffering and will continue to suffer injury based on the defendants' allegations, which Neogen denies, that it violated the Control Act.  As a result of said violations, the plaintiff has been threatened with a lawsuit by the defendant DEA.  Taking these allegations as true, the court finds that Neogen has made out a "case or controversy" sufficient to warrant declaratory relief pursuant to 28 U.S.C. § 2201.

### IV. Conclusion

Accordingly, the court being advised, **IT IS ORDERED** as follows:

(1)    An evidentiary hearing will be held on January 3, 2007, at 1:30 p.m. for the purpose of determining whether the individual defendants acted within the scope of their employment.  The court's ruling on the defendants' motion to substitute the United States in place of the individual defendants (DE 16) is **DEFERRED** until after that hearing.

(2)    The defendants' motion to dismiss the complaint (DE 17) is

**PARTIALLY GRANTED**, to the extent that Counts I, II, III, IV, and V of the complaint, insofar as they are asserted against the DOJ, the DEA, and Settle, Sowers, Collier, and Otero in their official capacities, are **DISMISSED WITH PREJUDICE**.

(3)   The remainder of the defendants' motion to dismiss (DE 17) is **DENIED**.

(4)   The plaintiff's motion to strike (DE 31) is **DENIED AS MOOT**.

Signed on November 28, 2006

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY